# IN THE UNITED STATES COURT OF APPEALS
## FOR THE SEVENTH CIRCUIT

**Appeal No. 23-1810**

---

JIMMIE JOSHUA

      Plaintiff-Appellee,

v.

ISAAC WACHHOLZ, et al.,

      Defendants-Appellants.

---

## BRIEF OF THE PLAINTIFF-APPELLEE, JIMMIE JOSHUA

---

Appeal from the United States District Court
for the Western District of Wisconsin,
Case No. 22-cv-24
The Honorable William M. Conley, W.D.

---

PAUL A. KINNE
State Bar No. 1021493
E-mail:  kinne@gtwlawyers.com
*Attorney for Plaintiff-Appellee,*
*Jimmie Joshua*

GINGRAS, THOMSEN & WACHS, LLP

8150 Excelsior Drive
Madison, WI 53717
(608) 833-2632

# DISCLOSURE STATEMENT

Save As | Clear Form

Case: 23-1810    Document: 7    Filed: 05/30/2023    Pages: 1

**APPEARANCE & CIRCUIT RULE 26.1 DISCLOSURE STATEMENT**

Appellate Court No: 23-1810

Short Caption: Joshua v. Wachholz, et al.

To enable the judges to determine whether recusal is necessary or appropriate, an attorney for a non-governmental party, amicus curiae, intervenor or a private attorney representing a government party, must furnish a disclosure statement providing the following information in compliance with Circuit Rule 26.1 and Fed. R. App. P. 26.1.

The Court prefers that the disclosure statements be filed immediately following docketing; but, the disclosure statement must be filed within 21 days of docketing or upon the filing of a motion, response, petition, or answer in this court, whichever occurs first. Attorneys are required to file an amended statement to reflect any material changes in the required information. The text of the statement must also be included in the front of the table of contents of the party's main brief. **Counsel is required to complete the entire statement and to use N/A for any information that is not applicable if this form is used.**

☑ **PLEASE CHECK HERE IF ANY INFORMATION ON THIS FORM IS NEW OR REVISED AND INDICATE WHICH INFORMATION IS NEW OR REVISED.**

(1) The full name of every party that the attorney represents in the case (if the party is a corporation, you must provide the corporate disclosure information required by Fed. R. App. P. 26.1 by completing item #3):
Jimmie Joshua

(2) The names of all law firms whose partners or associates have appeared for the party in the case (including proceedings in the district court or before an administrative agency) or are expected to appear for the party in this court:
Gingras, Thomsen & Wachs

(3) If the party, amicus or intervenor is a corporation:

i)      Identify all its parent corporations, if any; and

N/A

ii)     list any publicly held company that owns 10% or more of the party's, amicus' or intervenor's stock:

N/A

(4) Provide information required by FRAP 26.1(b) – Organizational Victims in Criminal Cases:

N/A

(5) Provide Debtor information required by FRAP 26.1 (c) 1 & 2:

N/A

Attorney's Signature: s/ Paul A. Kinne                    Date: 5/30/2023

Attorney's Printed Name: Paul A. Kinne

Please indicate if you are *Counsel of Record* for the above listed parties pursuant to Circuit Rule 3(d).    Yes ☐    No ☑

Address: 8150 Excelsior Drive

Madison, WI 53717

Phone Number: 608-833-2632                    Fax Number: 608-833-2874

E-Mail Address: kinne@gtwlawyers.com

rev. 12/19 AK

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ............................................................................................ iv

JURISDICTIONAL STATEMENT ............................................................................... 1

STATEMENT OF THE ISSUES.................................................................................... 2

STATEMENT OF THE CASE........................................................................................ 3

    I.     Procedural Background................................................................................ 3

    II.    Factual Background .................................................................................... 4

SUMMARY OF THE ARGUMENT ............................................................................. 6

STANDARD OF REVIEW ........................................................................................... 7

ARGUMENT .................................................................................................................. 7

    I.     This Court Does Not Have Jurisdiction Over This Qualified Immunity Appeal, Which Arises Out of a Denial of Summary Judgment ............................................................. 7

        a.   This Court Lacks Jurisdiction Because the District Court Did Not Conclusively Determine Qualified Immunity................................................................. 8

        b.   This Court Lacks Jurisdiction Because the District Court Correctly Identified Disputed Facts and Competing Inferences for the Jury to Decide.......................... 9

        c.   The Officers Ignore Applicable Law on the Issue of Jurisdiction and Misconstrue the District Court's Decision on Qualified Immunity........................................... 10

    II.    The Officers Are Not Entitled to Qualified Immunity from Joshua's Fourteenth Amendment Use of Force Claim ................................................................. 13

        a.   The Officers Violated Joshua's Fourteenth Amendment Right............................ 14

            i.   The Facts and Allegations Support a Finding that Officer Wachholz Violated a Constitutional Right .............................................................. 16

            ii.   The Facts and Allegations Support a Finding that Officers Shotliff and Poquette Violated a Constitutional Right ................................................. 23

        b.   Joshua's Constitutional Right was Clearly Established at the Time of the Incident ................................................................................................. 30

CONCLUSION................................................................................................................ 38

CERTIFICATE OF COMPLIANCE............................................................................. 39

PROOF OF SERVICE.................................................................................................... 40

TABLE OF CONTENTS TO APPELLEE'S APPENDIX ........................................ 41

# TABLE OF AUTHORITIES

## **<u>Cases</u>**

*Abbott v. Sangamon Cnty., Ill.*,
  705 F.3d 706 (7th Cir. 2013) ................................... 6, 15, 16,  20, 24, 32, 33, 35, 36, 37
*Alicea v. Thomas*,
  815 F.3d 283 (7th Cir. 2016) ......................................................... 6, 14, 15, 30, 35, 36
*Anderson v. Romero*,
  72 F.3d 518 (7th Cir. 1995) ................................................................................ 35
*Banks v. Stolz*,
  2015 U.S. Dist. LEXIS 54257 (C.D. Ill.)................................................... 14, 15, 31, 32
*Barichello v. McDonald*,
  98 F.3d 948 (7th Cir. 1996) ................................................................................... 7
*Behrens v. Pelletier*,
  516 U.S. 299 (1996)............................................................................................. 12
*Brooks v. City of Aurora, Ill.*,
  653 F.3d 478 (7th Cir. 2011) .............................................................. 22, 27, 28, 29
*Brown v. Argosy Gaming Co.*,
  360 F.3d 703 (7th Cir. 2004) ................................................................................. 8
*Clash v. Beatty*,
  77 F.3d 1045 (7th Cir. 1996) ............................................................................... 32
*Coopers & Lybrand v. Livesay*,
  437 U.S. 463 (1978)............................................................................................... 8
*Cyrus v. Town of Muwonango*,
  624 F.d3d 856 (7th Cit. 2010)............................................ 15, 19, 20, 22, 31, 32, 35
*Dockery v. Blackburn*,
  911 F.3d 458 (7th Cir. 2018) ............................................... 19, 21, 22, 27, 28
*Doe v. Village of Deerfield*,
  819 F.3d 372 (7th Cir. 2016) ................................................................................. 8
*Dye v. Lomen*,
  40 Fed. Appx. 993 (7th Cir. 2002).................................................................... 17
*Estate of Carlock v. Williamson*,
  2013 U.S. Dist. LEXIS 201957 (C.D. Ill.)............................................................. 14, 15
*Estate of Clark v. Walker*,
  865 F.3d 544 (7th Cir. 2017) ................................................................................. 7
*Estate of Starks v. Enyart*,
  5 F.3d 230 (7th Cir. 1993) ........................................................................... 20, 32
*Ferguson v. McDonough*,
  13 F.4th 574, (7th Cir. 2021) ........................................................................... 1, 2
*Forrest v. Prine*,
  620 F.3d (7th Cir. 2010) ............................................................................. 16, 17
*Fulton v. Dulin*,
  2018 U.S. Dist. LEXIS 88699 (N.D. Ind.)................................................. 20, 22, 30, 32
*Hanson v. LeVan*,
  967 F.3d 584, (7th Cir. 2020) ................................................................................. 2

iv

*Harer v. Casey,*
  962 F.3d 299 (7th Cir. 2020) ............................................................... 8
*Holmes v. Vill. Of Hoffman Estates,*
  511 F.3d 673 (7th Cir. 2007) ............................................................... 31
*Huff v. Tabler,*
  2019 WL 3499494 (July 31, 2019, N.D. Ind.) ................................... 37, 38
*Husnik v. Engles,*
  495 Fed. Appx. 719 (7th Cir. 2012) .................................................... 17
*Johnson v. Scott,*
  576 F.3d 658 (7th Cir. 2009) ............................................................... 29
*Kingsley v. Hendrickson,*
  576 U.S. 389, 135 S. Ct. 2466 (2015) ......................................... 6, 14, 26
*Koh v. Ustich,*
  933 F.3d 836 (7th Cir. 2019) ............................................................... 10
*Levan v. George,*
  604 F.3d 366 (7th Cir. 2010) ............................................................... 2
*Lovelace v. Gibson*,
  21 F.4th 481 (7th Cir. 2021) ............................................................. 7, 9
*Morfin v. City of E. Chicago,*
  349 F.3d 989 (7th Cir. 2003) ......................................... 6, 15, 21, 22, 31, 35
*Ortiz v. Jordan,*
  562 U.S. 180 (2011) ........................................................................... 1
*Payne v. Pauley,*
  337 F.3d 767 (7th Cir. 2003) ............................................................... 7
*Pearson v. Callahan,*
  555 U.S. 223 (2009) ........................................................................... 14
*Pena v. Leombruni,*
  200 F.3d 1031 (7th Cir. 1999) ............................................................. 30
*Phillips v. Cmty. Ins. Corp.,*
  678 F.3d 513 (7th Cir. 2012) ............................................. 33, 35, 36, 37
*Price v. McCoy,*
  2021 U.S. Dist. LEXIS 215450 (N.D. Ill.) ............................ 23, 24, 25, 32, 36, 37
*Rambo v. Daley,*
  68 F.3d 203 (7th Cir. 1995) ............................................................... 31
*Ramos v. Rodriguez,*
  2022 U.S. Dist. LEXIS 16759 (N.D. Ill.) ............................... 31, 33, 36, 37
*Richer v. La Crosse County,*
  2002 U.S. Dist. LEXIS 27415 (W.D. Wisc) ............................... 25, 26, 32
*Unified Sch. Dist. No. 1 v. Red-ding,*
  557 U.S. 364, 129 S. Ct. 2633 (2009) ................................................ 36
*Scott v. Harris,*
  550 U.S. 372 (2007) ........................................................................... 13
*Simpson v. Little,*
  16 F.4th 1353 (10th Cir. 2021) ........................................................... 36
*Smith v. Finkley,*
  10 F.4th 725 7th Cir. 2021) ................................................................ 9

*Soto v. Dickey,*
    744 F.2d 1260 (7th Cir. 1984) ............................................................ 26
*Stewardson v. Biggs,*
    43 F.4th 732 (7th Cir. 2022) ........................... 1, 2, 6, 7, 8, 9, 10, 13
*Sullivan v. Ramirez,*
    360 F.3d 692 (7th Cir. 2004) .............................................................. 7
*Taylor v. City of Milford,*
    10 F.4th 800 (7th Cir. 2021) .............................................................. 8
*Thomas v. Stalter,*
    20 F.3d 298 (7th Cir. 1994) ........................................................ 25, 32
*Thompson v. Cope,*
    900 F.3d 414 (7th Cir. 2018) ............................................................ 35
*Weinmann v. McClone,*
    787 F.3d 444 (7th Cir. 2015) ............................................................ 10
*Whitlock v. Brueggemann,*
    682 F.3d 567 (7th Cir. 2012) ............................................................ 12
*Woods v. City of Chicago,*
    234 F.3d 979 (7th Cir. 2000) ............................................................ 30

## Statutes

28 U.S.C. § 1291 ...................................................................................... 1, 7
42 U.S.C. § 1983 ......................................................................................... 3

## Rules

Fed. R. App. P. 32(a)(5) ........................................................................... 39
Fed. R. App. P. 32(a)(6) ........................................................................... 39
Fed. R. App. P. 32(a)(7)(B) ...................................................................... 39
Fed. R. Civ. P. 56(c)(1)(A) ....................................................................... 29
Rule 32(c) ................................................................................................. 39

## JURISDICTIONAL STATEMENT

Defendants-Appellants' statement regarding the District Court's jurisdiction is correct and complete.

Plaintiff-Appellee, Jimmie Joshua (hereinafter "Joshua"), disagrees with Defendants-Appellants' statement on appellate jurisdiction because it is incorrect.

Under 28 U.S.C. § 1291, this Court has jurisdiction to hear appeals only from "final decisions" of district courts. *Stewardson v. Biggs*, 43 F.4th 732, 735 (7th Cir. 2022). Interlocutory appeals are a narrow exception to this rule. *Id.* A district court's denial of a motion for summary judgment is generally a non-appealable interlocutory order. *Ortiz v. Jordan*, 562 U.S. 180, 188 (2011). The limited exception to this rule is when a district court denies summary judgment on the basis that the defendants are not entitled to qualified immunity. *Id.*

This Court has recently clarified that it does not have jurisdiction to review a district court's denial of summary judgment based on qualified immunity on interlocutory appeal "when the district court's decision, or the appellant's arguments, turn on disputes of material fact." *Stewardson*, 43 F.4th at 734. If the appellant fails to raise a "purely legal issue" that "does not depend on disputed facts," this Court must dismiss the appeal for lack of jurisdiction. *Id.* (quoting *Ferguson v. McDonough*, 13 F.4th 574, 580 (7th Cir. 2021)).

*Stewardson* is directly on point and establishes that this Court does not have jurisdiction to consider this appeal. Here, the District Court held that "[a]s for defendants' alternative qualified immunity argument, the same factual disputes related to Joshua's compliance preclude finding any defendant entitled to immunity from trial as well." (A. 1, Decision pp. 11-12.) Even though the District Court cited *Stewardson* in its decision, (*Id.* at 12) Defendants-Appellants notably did not

discuss, much less cite, *Stewardson*, nor do they address the disputed facts identified by the District Court.

Defendants-Appellants (hereinafter "Officers") fail to articulate why their interlocutory appeal hinges on pure questions of law. In turn, this appeal should be dismissed pursuant to well-established Seventh Circuit caselaw. *See Ferguson v. McDonough*, 13 F.4th 574, 579-80 (7th Cir. 2021) (an order "denying qualified immunity does not constitute a final decision on the defendant's right not to stand trial when the district court denies summary judgment on the ground that factual disputes exist which prevent the resolution of the qualified immunity defense."); *see Hanson v. LeVan*, 967 F.3d 584, 589 (7th Cir. 2020) (appellate review "is unavailable for a district court's 'fact-based' decision – for example, that the evidence in the pretrial record shows a genuine issue of fact on which qualified immunity depends."); *see also Levan v. George*, 604 F.3d 366, 369 (7th Cir. 2010) ("If the denial of qualified immunity turns on factual rather than legal questions, the denial is not properly subject to appellate jurisdiction under the collateral order doctrine because the decision is not 'final.'").

## STATEMENT OF THE ISSUES

1. Does this Court have appellate jurisdiction when the District Court deferred a ruling on qualified immunity because there were factual disputes that precluded summary judgment and a determination on qualified immunity until after trial?

2. Are jailers entitled to qualified immunity when they use a significant amount of force on a non-resisting or passively resisting inmate?

## STATEMENT OF THE CASE

### I. Procedural Background

Joshua filed this 42 U.S.C. § 1983 case against Isaac Wachholz, Sean Shotliff, B. Poquette, Travis McPherson, "Nurse Mindy," WellPath Mental and Medical Healthcare, and Dane County on January 13, 2022, in the United States District Court for the Western District of Wisconsin. (Appellee's App. 17.) Joshua brought claims under the Eighth and Fourteenth Amendments of the United States Constitution arising from the injuries he sustained while being dragged out of his cell in the Dane County Jail on December 23, 2020. (Appellee's App. 18, 20.) On March 1, 2022, the District Court permitted Joshua to proceed with his Fourteenth Amendment claim that Isaac Wachholz, Sean Shotliff, and B. Poquette used excessive force against him. (Appellee's App. 36.)

On January 13, 2023, the Officers filed a Motion for Summary Judgment seeking dismissal of all claims as a matter of law and asserting the affirmative defense of qualified immunity. On April 21, 2023, the District Court issued an Order denying the Officers' motion. In that Order, the District Court highlighted a plethora of genuine disputes of material fact as its rationale for denying summary judgment. (A. 1, Decision, pp. 7-12.)[1] The District Court found that a reasonable jury could reasonably conclude that the Officers' use of force was objectively unreasonable. (A. 1, Decision pp. 7-11.) As for the Officers' qualified immunity argument, the District Court held that the same factual disputes relating to Joshua's compliance precluded a finding of qualified immunity. (A. 1, Decision, pp. 11-12.) The Court noted that the Officers could reassert the qualified immunity defense at the close of evidence at trial. (A. 1, Decision p. 12.)

---

[1] Joshua is following the same references as Defendants-Appellants. Citations to the record on appeal are to "R," followed by the District Court docketing number and a page number/paragraph where needed. Citations to Defendants-Appellants' short appendix are to "A," followed by the page number. Much of the factual background is taken directly from the District Court's Decision and from Defendants' Response to Plaintiff's Proposed Facts (R.35).

The Officers filed a timely Notice of Appeal on April 27, 2023. Joshua respectfully requests that this Court dismiss this appeal for lack of jurisdiction. Should this Court reach the merits of qualified immunity, Joshua respectfully asks this Court to affirm the decision of the District Court.

## II. Factual Background

On December 23, 2020, Joshua was incarcerated in the Dane County Jail in cellblock 705. (A. 1, Decision p. 2.) Joshua was allowed out of his cell for about one hour per day, when he could use a computer tablet and telephone. (A. 1, Decision p. 3.) Joshua had been out of his cell for approximately an hour when Officer Isaac Wachholz (hereinafter "Wachholz") conducted a security check and ordered him to "lock down" and "step in" his cell. (Appellee's App. 6, ¶ 37; Appellee's App. 7, ¶¶ 39, 41.) When Joshua refused to lock down, Wachholz told him to "go fucking lock down now." (Appellee's App. 7, ¶ 39.) After refusing to lock down, Joshua told Wachholz to take him to "717," – the disciplinary block. (A. 1, Decision p. 3) Wachholz eventually agreed that Joshua should be taken to cellblock 717. (*Id.*)

During this argument, Wachholz signaled Officer Sean Shotliff (hereinafter "Shotliff"), who witnessed the incident through a window, to call additional deputies to the cellblock. (Appellee's App. 8, ¶¶ 48, 49.) Shotliff then radioed Officer Ben Poquette (hereinafter "Poquette") to help Wachholz. (Appellee's App. 8, ¶ 50.) At this point, Wachholz was cognizant that backup would arrive soon. (*Id.*)

As Wachholz attempted to handcuff Joshua, Joshua began to comply with the original order and began backing into his cell to lock down. (Appellee's App. 9, ¶ 54.) Wachholz again moved toward the retreating Joshua, motioning him to come forward. (A. 1, Decision p. 3.) Rather than allowing Joshua to enter his cell and close the door, which would have resolved the entire matter,

Wachholz grabbed Joshua's arm near his bicep, preventing Joshua from locking down. (Appellee's App. 9, ¶¶ 53, 54.) Even though Wachholz knew backup was coming, he decided to initiate physical contact with the retreating inmate and attempt to handcuff him to take him to Block 717. (Appellee's App. 8, ¶ 52; Appellee's App. 9, ¶ 53.) "[N]o … evidence suggests that Joshua was a physical threat at the time that Wachholz initiated contact." (A. 1, p. 7.)

After Wachholz's initial contact, Joshua continued back into his cell in an effort to abide by the initial order to lock down. (Appellee's App. 10, ¶ 57.) The video evidence captures this entire interaction up to this point and speaks for itself. (A. 1, p. 3-4.) Instead of letting Joshua enter the cell and waiting for backup, Wachholz entered Joshua's cell to pull him out. (Appellee's App. 9,¶ 55; Appellee's App. 10, ¶ 56.)  Again, Wachholz applied this force without backup, even though he knew backup would arrive any second. (*Id.;* Appellee's App. 12, ¶ 72.) Wachholz was alone with Joshua in the cell for several seconds. (Appellee's App. 11, ¶ 62.) At this point, Joshua began complying Wachholz's order: his hands were behind his back, he was not resisting, and he made no attempt to injure or threaten Wachholz (Appellee's App. 10, ¶ 61; Appellee's App. 11, ¶ 67.)

Once Shotliff and Poquette arrived, they joined Wachholz and tried to tackle Joshua to the floor. (Appellee's App. 14, ¶ 81.) While Joshua had his hands behind his back to be handcuffed, Joshua informed the deputies that he was not resisting. (Appellee's App. 11, ¶ 67.) Neither Shotliff nor Poquette intervened to stop Wachholz so Wachholz could retreat from the cell. Instead, both deputies joined Wachholz in the assault. (Appellee's App. 14, ¶ 81.) Shotliff then directed Poquette and Wachholz to take Joshua to the ground, which was a signal to pull Joshua out of the cell. (*Id.*) The officers forced Joshua out of the cell and threw him to the floor, causing him to sustain a broken hip and permanent injuries. (Appellee's App. 14, ¶¶ 81-83.)

## SUMMARY OF THE ARGUMENT

Joshua maintains that this Court does not have jurisdiction to decide this appeal under the collateral order doctrine and the well-established law of the Seventh Circuit, including *Stewardson*, given the District Court's ruling that "the same factual disputes related to Joshua's compliance preclude finding any defendant entitled to immunity from trial as well." (A. 1, Decision pp. 11-12.)

Should this Court determine it has jurisdiction over this appeal, viewing the facts and inferences "in a light most favorable to the plaintiff" establishes that there is enough evidence for a jury to conclude that the Officers violated Joshua's rights under the Fourteenth Amendment. The Seventh Circuit has clearly established that an officer may not use significant force on a non-resisting or passively resisting individual. *Alicea*, 815 F.3d at 291-92. When analyzing an officer's conduct, courts apply the objective reasonableness test, which does not allow an officer to apply greater force than is reasonably necessary. *Kingsley v. Hendrickson*, 576 U.S. 389, 398. Moreover, this Court has ruled that the use of more force than necessary on a plaintiff who resists only that force may be excessive force. *Morfin v. City of E. Chicago*, 349 F.3d 989, 1005 (7th Cir. 2003) While an initial use of force, by itself, may not be unreasonable, the repeated use of force may be found to be grossly disproportionate to any threat posed and constitute excessive force. *Abbott v. Sangamon Cnty., Ill.*, 705 F.3d 706, 729 (7th Cir. 2013).

The Officers violated a clearly established law prohibiting the use of excessive force on a non-resisting or passively resisting inmate. Wachholz's decision to grab Joshua's arm must not be considered in isolation; rather, this Court must analyze the "totality of circumstances" to determine objective reasonableness. *Abbott*, 705 F.3d at 729. When considering the "totality of circumstances," Wachholz, as well as Shotliff and Poquette, applied a significant level of force to

Joshua, who was not actively resisting their orders. Therefore, the Officers are not entitled to qualified immunity, and this Court should affirm the decision of the District Court.

## STANDARD OF REVIEW

This Court reviews "de novo the district court's denial of summary judgment on the ground of qualified immunity." *Sullivan v. Ramirez*, 360 F.3d 692, 696 (7th Cir. 2004). When a motion "is based on qualified immunity, summary judgment is not appropriate if the plaintiff can present a version of the facts that is supported by the evidence and under which defendants would not be entitled to qualified immunity." *Barichello v. McDonald*, 98 F.3d 948, 952 (7th Cir. 1996). In reviewing a summary judgment decision based on qualified immunity, this Court considers "(1) whether the facts, taken in the light most favorable to the plaintiff, show that the defendant violated a constitutional right; and (2) whether the constitutional right was clearly established at that time." *Estate of Clark v. Walker*, 865 F.3d 544, 550 (7th Cir. 2017). "On summary judgment a court may not make credibility determinations, weigh the evidence, or decide which inferences to draw from the facts; these are jobs for a factfinder." *Payne v. Pauley*, 337 F.3d 767, 770 (7th Cir. 2003).

## ARGUMENT

### I. This Court Does Not Have Jurisdiction Over This Qualified Immunity Appeal, Which Arises Out of a Denial of Summary Judgment.

This Court only has jurisdiction to review "final decisions" of the district courts. 28 U.S.C. § 1291. Federal law only carves out a "small class" of immediately appealable issues that are deemed final decisions. *Lovelace v. Gibson*, 21 F.4th 481, 486 (7th Cir. 2021). The collateral order doctrine is a "narrow exception" to the final judgment rule. *Stewardson v. Biggs*, 43 F.4th 732, 735 (7th Cir. 2022). "To fall within the collateral order doctrine, the non-final order must: (1) be conclusive on the issue presented; (2) resolve an important question separate from the merits of

the underlying action; and (3) be 'effectively unreviewable' on an appeal from the final judgment of the underlying action." *Doe v. Village of Deerfield*, 819 F.3d 372, 375 (7th Cir. 2016).

The propriety of an interlocutory appeal from a district court's denial of qualified immunity typically depends on an analysis of the second requirement – the "extent that it turns on an issue of law." *Stewardson*, 43 F.4th at 735. Appellate jurisdiction is only obtained if "the relevant material facts are undisputed or … when the defendant accepts the plaintiff's version of the facts as true for now." *Id.* at 735-36. In this case, the District Court's ruling was not conclusive on the issue presented, and the Officers do not satisfy the requirement that the dispute turns on an issue of law.

### a. This Court Lacks Jurisdiction Because the District Court Did Not Conclusively Determine Qualified Immunity.

The first requirement for the collateral order exception is that the order must "conclusively determine the disputed question." *Brown v. Argosy Gaming Co.,* 360 F.3d 703, 706 (7th Cir. 2004) (quoting *Coopers & Lybrand v. Livesay*, 437 U.S. 463, 467 (1978)). In this case, the District Court never reached the "disputed question" of qualified immunity. Citing *Stewardson*, the District Court determined that summary judgment on the issue of qualified immunity was inappropriate because "the same factual disputes related to Joshua's compliance preclude finding any defendant entitled to immunity from trial as well." (A. 1, Decision pp 11-12).

The District Court's ruling followed years of well-defined Seventh Circuit law. *See Taylor v. City of Milford*, 10 F.4th 800, 808 (7th Cir. 2021); *see also Harer v. Casey*, 962 F.3d 299, 312 (7th Cir. 2020) (deferring the decision on qualified immunity "for another day, depending on the potential development of facts not included in the record" because "it remains an open question" whether the plaintiffs can prove the defendants "violated their clearly established constitutional rights."). The District Court correctly deferred on the issue of qualified immunity until "the close

8

of the plaintiff's case and the close of the evidence" so that disputed factual issues necessary to the decision may be determined by a jury. (A. 1, Decision p 12.) Since the District Court did not "conclusively determine" the issue of qualified immunity, there is no legal issue that is ripe for this Court to review.

### b.  This Court Lacks Jurisdiction Because the District Court Correctly Identified Disputed Facts and Competing Inferences for the Jury to Decide.

The second requirement for the collateral order exception is that the order must "resolve an important question separate from the merits of the underlying action." *Doe*, 819 F.3d at 375. In other words, the District Court's denial of qualified immunity must turn on an "issue of law." *Lovelace*, 21 F4th at 487. According to *Stewardson*, to determine if the Officers' qualified immunity arguments turn on legal issues only, this Court must "'closely examine' whether (1) the district court 'identified factual disputes as the reason for denying qualified immunity'; and (2) [defendant-appellant] 'make[s] a back-door effort to use disputed facts' to support his arguments.'" 43 F.4th at 736 (quoting  *v. Finkley*, 10 F.4th 725, 736 (7th Cir. 2021)). As in *Stewardson*, there is no need for this Court to look further than the District Court's decision to determine that there is no appellate jurisdiction – there are clear disputed facts that require resolution before the issue of qualified immunity can be resolved.

Regarding the first factor for this Court to "closely examine," here, the District Court clearly "identified factual disputes as the reason for denying qualified immunity." In its ruling, the District Court stated that because the "same factual disputes related to Joshua's compliance preclude" summary judgment, it would defer deciding the issue of qualified immunity until "the close of the plaintiff's case and the close of evidence." (A. 1, Decision pp 11-12.) As in *Stewardson*, here it is clear that the District Court's determination of qualified immunity upon motion for summary judgment depends on the resolution of disputed facts. Thus, the order denying

summary judgment is not appealable. *See Weinmann v. McClone*, 787 F.3d 444, 446 (7th Cir. 2015) ("An appeal from a ruling on qualified immunity is not the time for the resolution of disputed facts.").

### c. The Officers Ignore Applicable Law on the Issue of Jurisdiction and Misconstrue the District Court's Decision on Qualified Immunity.

The second factor for this Court to "closely examine" to determine if Defendant-Appellant's arguments turn on legal issues only is whether they "make a back-door effort to use disputed facts" to support their argument." *Stewardson*, 43 F.4th at 736. If an appellant's purported purely legal question is "inseparable from the questions of fact identified by the district court," the appellate court lacks jurisdiction. *Id.* at 734 (quoting *Koh v. Ustich*, 933 F.3d 836, 838 (7th Cir. 2019)). In this case, the Officers fail to articulate why their interlocutory appeal hinges on pure questions of law.

The Officers attempt to frame factual disputes under the façade of purely legal questions to secure jurisdiction. They argue that the District Court "did not analyze qualified immunity" with respect to Wachholz's initial decision to grab Joshua's arm and with respect to the takedown maneuver. (Defendants-Appellants' Brief, p. 15.) First, regarding the initial use of force, the Officers contend that the District Court did not identify a specific proposed fact in dispute because "the entire incident was on video and the facts were largely undisputed." (*Id.*) In its decision, the District Court identified the following "factual disputes" (A. 1, Decision pp 11) relating to Wachholz's initial decision to use force:

- "[A] jury could reasonably conclude that Wachholz's initial use of force was objectively unreasonable." (*Id.* at 7.)

- "[W]hether Wachholz's initial use of force could be casually tied to Joshua's ultimate broken hip will be for the jury to decide." (*Id.* n.3.)

- "[W]ithout considering Joshua's subjective intent, a reasonable jury could conclude from the footage that a reasonable officer would have recognized, at minimum, that Joshua was retreating and presented no threat to [Wachholz] physically. (*Id.* at 8.)

- "Yet in viewing all the facts and circumstances, a reasonable jury could find that the objective security threat Joshua posed did not justify Wachholz initiating physical contact." (*Id.*)

- "Although a jury ultimately may credit Wachholz's safety concerns, the video footage and the opinion of the plaintiff's expert supports a finding that an objectively reasonable officer would not have initiated physical contact." (*Id.*)

Second, regarding the takedown maneuver, the District Court cited to the following "factual disputes" (*Id.* at 11):

- "Because there is a material, factual dispute as to dispute whether Joshua resisted the deputies' efforts to handcuff him, a jury could also conclude that the takedown resulting in a broken hip was objectively unreasonable." (*Id.* at 9.)

- "In particular, Joshua maintains he was not resisting [the jailers] in the cell, having testified in his deposition that his hands were behind his back, and he did not threaten the deputies but instead told them that he was not resisting. In contrast, Shotliff and Poquette maintain that the takedown was an appropriate and necessary next step *because* Joshua continued to resist by twisting away from their grasp. Unfortunately, the video footage does not conclusively resolve the parties' factual dispute." (*Id.*)

- "Because the footage does not show why Joshua's foot appears planted in the video footage, a jury will have to decide whether Joshua was resisting the deputies." (*Id.* at 10.)

- "[I]f a jury were to believe that Joshua was allowing the deputies to handcuff him, it could reasonably conclude that the takedown was gratuitous, and thus unreasonable." (*Id.*)

The Officers ignore the District Court's rulings and baldly claim that the "District Court did not analyze qualified immunity" with respect to the initial use of force and the takedown maneuver. (Defendants-Appellants' Brief, p. 15.) These assertions misconstrue the clear language in the decision. The District Court expressly held that the "factual disputes" – which are referenced in the bullet-point list above – were considered in its analysis of qualified immunity. (A. 1, Decision pp 11-12.) Just because the District Court did not specifically rehash each disputed fact it previously discussed does not mean it failed to analyze qualified immunity with respect to those facts.

Whether the Officers violated a constitutional right hinges on whether the use of force was objectively reasonable. The District Court determined that there were disputes of material fact as to the reasonableness of the Officers' actions. Neither that determination, nor this Court's review of it, involves a legal question which would give this Court appellate jurisdiction. The Officers' argument is nothing more than a "back-door effort" to use clearly identifiable disputed facts to support their argument. *See Whitlock v. Brueggemann*, 682 F.3d 567, 574 (7th Cir. 2012) (defendants' argument that there was "no dispute of material fact" was a "back-door" attempt to create an "abstract legal question" to create appellate jurisdiction and was "no more than a 'sufficiency of the evidence' appeal that [the court had] no jurisdiction to consider."); *see also Behrens v. Pelletier*, 516 U.S. 299, 313 (1996) ("determinations of evidentiary sufficiency at summary judgment are not immediately appealable merely because they happen to arise in a qualified-immunity case.").

The Officers point to an exception to the general rule that qualified immunity appeals are confined to legal issues, which arises if one account of the facts is "blatantly contradicted by the record, so that no reasonable jury could believe it," in which case, "a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment." *Scott v. Harris*, 550 U.S. 372, 380 (2007). This exception is inapplicable. Joshua's version of the facts is not "blatantly contradicted" by the video evidence; both parties are relying on the same video evidence to demonstrate their version of events. Unfortunately, "the video footage does not conclusively resolve the parties' factual dispute" because, as the District Court explained, "there is a material, factual dispute as to … whether Joshua resisted the deputies' efforts to handcuff him…." (A. 1, Decision pp 9-10.) The interpretation of the video footage will ultimately be an issue "a jury will have to decide." (*Id.* 10.)

This case does not present a purely legal question directly bearing on the issue of qualified immunity that can be decided by this Court by assuming Joshua's version of the facts. Rather, this is a case where there are not only disputed facts but also competing inferences from the undisputed facts. Under these circumstances, the District Court properly deferred ruling on qualified immunity. (A. 1, Decision p 12.) Therefore, there is no legal ruling that is ripe for this Court's review. As in *Stewardson*, there is no appellate jurisdiction to review the denial of summary judgment based on qualified immunity, and the Officers' appeal should be dismissed.

## II. The Officers Are Not Entitled to Qualified Immunity from Joshua's Fourteenth Amendment Use of Force Claim.

Even if this Court determines there is jurisdiction for this appeal and that the record is sufficiently developed to reach the merits of qualified immunity, the Officers are not entitled to qualified immunity. A court reviewing a defendant's motion for summary judgment on qualified immunity considers: (1) whether the facts, taken in the light most favorable to the plaintiff, show

that the defendant violated a constitutional right; and (2) whether the constitutional right was clearly established at that time. *Pearson v. Callahan*, 555 U.S. 223, 232 (2009). In this case, the Officers violated Joshua's clearly established Fourteenth Amendment right to be free from the use of excessive force.

### a.  The Officers Violated Joshua's Fourteenth Amendment Right.

Under the Fourteenth Amendment, a pretrial detainee need only show that the force purposely or knowingly used against him was objectively unreasonable. *Kingsley v. Hendrickson*, 576 U.S. 389, 397-98 125 S. Ct. 2466 (2015). When an officer's use of force amounts to punishment, is not "rationally related" to a legitimate governmental purpose or appears excessive in relation to that purpose when viewed objectively, the use of force is excessive. *Id.* at 398 (quoting *Bell v. Wolfish*, 441 U.S. 520, 561, S. Ct. 1861 (1979)). To establish excessive force, a pretrial detainee need only show that the force purposely or knowingly used against him was objectively unreasonable. *Id.* at 396-97. In determining whether the force was objectively unreasonable, a court considers the facts and circumstances of each specific case, analyzing factors such as (1) the relationship between the need for the use of force and the amount of force used; (2) the extent of the plaintiff's injury; (3) any effort made by the officer to temper or limit the amount of force used; (4) the severity of the security problem; (5) the officer's reasonably perceived threat; and (6) whether plaintiff was actively resisting. *Id.* at 397.

Courts analyzing the Fourth Amendment have similarly employed the objective reasonableness standard. *Alicea v. Thomas*, 815 F.3d 283 (7th Cir. 2016); *Banks v. Stolz*, 2015 U.S. Dist. LEXIS 54257 (C.D. Ill.) *5; *Estate of Carlock v. Williamson*, 2013 U.S. Dist. LEXIS 201957 (C.D. Ill.) *19. In *Alicea*, this Court held that under the standard of objective reasonableness, use of force is analyzed from the perspective of a reasonable officer at the scene.

14

*Alicea*, 815 F.3d at 288. The court considers the totality of the circumstances known to the officer at the time the force was applied and depends on whether the plaintiff is able to establish that the force was applied in an objectively unreasonable manner. *Banks*, at *5; *Carlock*, at *20-21. When analyzing the Fourth Amendment, courts examine the officer's use of force based on factors similar to those used in Fourteenth Amendment cases: (1) the severity of the crime at issue; (2) whether the suspect poses an immediate threat to the safety of the officer; and (3) whether the suspect was actively resisting arrest. *Alicea*, 815 F.3d at 288; *Morfin v. City of E. Chicago*, 349 F.3d 989, 1004-05 (7th Cir. 2003). In *Alicea*, this Court found that force is only reasonable when it is proportional to the threat posed. *Alicea*, 815 F.3d at 288. If an officer's threat perception changes, so too should the force calculation. *Id.* The prohibition against significant force on a subdued suspect applies regardless of a suspect's previous behavior. *Id.* at 289. The fact that a suspect has resisted arrest before cannot justify disregarding his surrender in deciding whether and how to use force. *Id.* at 289.

An officer is not allowed to use greater force than is reasonably necessary under the objective reasonableness test. *Banks*, at *10. Force is only reasonable when exercised in proportion to the threat posed. *Cyrus v. Town of Muwonango*, 624 F.d3d 856, 863 (7th Cit. 2010). The Seventh Circuit has held that the use of more force than necessary on a plaintiff who resists only that force can constitute excessive force. *Morfin v. City of E. Chicago*, 349 F.3d 989, 1005 (7th Cir. 2003). This Court has also established that while an initial use of force might be justified, the repeated use of that force may be found to be grossly disproportionate to any threat posed and therefore unreasonable. *Abbott v. Sangamon Cnty., Ill.*, 705 F.3d 706, 729 (7th Cir. 2013).

### i.   The Facts and Allegations Support a Finding that Officer Wachholz Violated a Constitutional Right.

Joshua adequately alleged that Wachholz used excessive force, in violation of the Fourteenth Amendment. (Appellee's App. 54-63.) All the factors in the Fourteenth Amendment analysis favor Joshua. First, the relationship between the need for the use of force and the amount of force used was not objectively reasonable. Any need for Wachholz to apply force was mitigated by Joshua's attempts to retreat toward his cell. Wachholz's lack of need to use force was aggravated by his knowledge that backup was on its way. Joshua never threatened Wachholz, nor did he try to injure him.

The Officers attempt to frame the discussion of Wachholz's reasonableness solely around his decision to grab Joshua's arm, ignoring the use of force that occurred subsequent to that initial contact. For example, the Officers argue that "a rule that every touch or grab of an inmate for purposes of handcuffing is excessive force would be unworkable in a jail or prison setting." (Defendants-Appellants Brief, p. 24.) This misconstrues the District Court's Decision and the relevant caselaw on reasonable use of force. As provided by the District Court, just because "the initial need to physically subdue Joshua was justified does not mean that all subsequent uses of force were similarly justified,' and the 'totality of circumstances, not the first forcible act . . . determines objective reasonableness.'" (A. 1, Decision p. 9) (citing *Abbott v. Sangamon Cnty., Ill.*, 705 F.3d 706, 729 (7th Cir. 2013)). Joshua's claim is not limited to Wachholz grabbing his arm. Rather, Wachholz's excessive use of force is based on the "totality of circumstances" – the initial contact was just one component of the larger whole.

The Officers improperly cite cases with dissimilar factual scenarios to justify the relationship between the need for the use of force and the amount of force applied. For example, the Officers reference *Forrest v. Prine*, 620 F.3d (7th Cir. 2010) to argue that this Court has found

16

even higher levels of force to be reasonable when used to obtain compliance. (Defendants-Appellants' Brief, p. 22.) However, in *Forrest*, the inmate had a record of being extremely combative, including both an altercation where he "struck a police officer in the face" and an incident where he shouted obscenities with his fists clenched at the officers while they attempted to conduct a strip search. *Forrest*, 620 F.3d at 741-42. Wachholz also refers to *Husnik v. Engles*, 495 Fed. Appx. 719 (7th Cir. 2012), a case where the inmate "verbally abused a court commissioner and kicked one of the transport deputies in the chest," shouted expletives at the officers when they told him to return to his cell, slammed one of the officers into the wall when they attempted to get him under control, and thrashed back and forth once the officers finally secured him. *Id.* at 720-21.

*Forrest* and *Husnik* are inapplicable; there is no evidence on the record that Joshua had a history of combativeness, nor was Joshua threatening violence at the time of the incident. Wachholz also cites *Dye v. Lomen*, 40 Fed. Appx. 993 (7th Cir. 2002), a case where the inmate "was lying on his concrete safety bed completely covered with the blanket, [appearing] to be banging his head on the concrete bed." *Id.* at 995. *Dye* is similarly inapplicable. There is no evidence on the record that Joshua was self-harming.

*Forrest*, *Husnik*, and *Dye* did not hold that an officer's use of significant force is reasonable just because the inmate is non-compliant. These cases explain that an officer's use of higher levels of force may be reasonable when the inmate poses a physical threat to themselves or to officers. A greater application of force to obtain compliance is appropriate in such instances because of the need to prevent the imminent violent threat posed by the inmate. No such threat was apparent in Joshua's case, so the Officers' application of significant force was not supported by a need to apply such force.

Second, the extent of Joshua's injury suggests that the use of force was unreasonable. Due to the amount of force applied by the officers, Joshua sustained a broken hip, leaving him with a permanent injury. The District Court stated that "[t]here is no dispute that Joshua's injury was severe." (A. 1, Decision at 6) Wachholz does not mention the extent of Joshua's injury in his discussion of reasonableness. Instead, Wachholz focuses on the fact that Joshua was not "injured by Wachholz's grab." (Defendants-Appellants' Brief, p. 19.) Such a narrow analysis of the facts fails to account for the "totality of circumstances," which courts must consider when determining objective reasonableness. *Abbott*, 705 F.3d at 709.

Third, when considering the "totality of circumstances" Wachholz did not reasonably temper or limit the amount of force used. Prior to initiating physical contact, Wachholz attempted to temper the situation by telling Joshua to lock down. Wachholz's initial efforts worked – he ultimately convinced Joshua to lock down. However, this Court does not analyze reasonableness in isolation; it considers the circumstances as a whole. *Id.* at 709. In turn, when Wachholz grabbed Joshua, entered his cell, pulled him from his cell, and threw him to the floor, Wachholz certainly did not reasonably limit the amount of force used.

Fourth, Joshua did not present a severe enough security issue to justify the amount of force exerted. As previously explained, Joshua was not verbally or physically threatening to harm himself, Wachholz, Shotliff, Poquette, or any other officers at the time of the incident. (A. 1, Decision at 8) Joshua was backing away from Wachholz towards his cell. (*Id.*) He did not present a safety threat to other inmates in the vicinity – they were all locked down at the time. (*Id.*) Shotliff and Poquette were on their way to assist Wachholz, which Wachholz knew. (Appellee's App. 8, ¶ 50.) Yet, Wachholz cannot offer an explanation as to why he needed to make physical contact with Joshua. The severity of the security problem did not justify this amount of force.

Fifth, Wachholz did not reasonably perceive that Joshua was a physical threat. The only threat Wachholz could have perceived was Joshua initially standing between Wachholz and the door to the cellblock. That threat dissipated once Joshua attempted to retreat into his cell. Joshua agrees with Defendants-Appellants that "Joshua's subjective intent has no bearing on the analysis." (Defendants-Appellants' Brief, p. 21.) However, Wachholz's perception of the incident is certainly a factor for the Court to consider in this analysis. *Dockery v. Blackburn*, 911 F.3d 458, 466 (7th Cir. 2018) (noting that objective reasonableness turns on "how a reasonable officer would have perceived the circumstances."). Wachholz knew Joshua was retreating to his cell, diffusing any perceivable threat of aggression. Wachholz also knew that backup was arriving imminently, so entering Joshua's cell alone only would increase the security risk. As stated in the District Court's ruling, "without considering Joshua's subjective intent, a reasonable jury could conclude from the footage that a reasonable officer would have recognized, at minimum, that Joshua was retreating and presented no threat to him physically." (A. 1, Decision at 8).

Sixth, while Joshua did initially refuse Wachholz's first command, once he retreated to his cell, faced the wall, and placed his hands behind his head to be handcuffed, he was no longer physically resisting. In similar cases, the Seventh Circuit has held that an officer did not act reasonably when applying force, despite evidence of the plaintiff resisting. In *Cyrus v. Town of Muwonago*, 624 F.3d 856 (7th Cir. 2010), the officer asked the plaintiff to come toward the street to talk. *Id.* at 859. After the plaintiff turned and made his way back toward the house, the officer Tasered the plaintiff, and the officers struggled to handcuff the plaintiff. *Id.* The Seventh Circuit Court of Appeals noted that there was no evidence that the plaintiff was violently resisting the officers' attempts to handcuff him, even though he refused to release his arms for handcuffing. *Id.*

at 863. Once the plaintiff was on the ground, unarmed and unable to stand up on his own, "the risk calculus changed." *Id.*

As in *Cyrus*, once Joshua attempted to retreat into his cell and placed his hands behind his head to be handcuffed, Wachholz should have known that the use of force was excessive. Joshua's withdrawal reduced Wachholz's need for force as the situation progressed. When considering the "totality of circumstances," not just Wachholz's initial grab of Joshua's arm, it is clear that Wachholz's use of force was unreasonable.

In *Fulton v. Dulin*, 2018 U.S. Dist. LEXIS 88699 (N.D. Ind.), a Fourth Amendment case, the plaintiff failed to move over for emergency vehicles, leading to a police chase. *Id.* *29. Although the plaintiff was non-compliant when he refused to pull over, the pursuit was "low speed," lasting under one minute. *Id.* There was no physical threat posed to the officers or others, and the plaintiff did not attempt to flee once he was stopped. *Id.* at *30. The plaintiff did not comply with the officers' repeated commands that he get on his knees. *Id.* at *30-31. However, the plaintiff had his hands in the air and walked backwards toward the officers. *Id.* The officers claimed they felt threatened and used a Taser. *Id.* at *30. In its decision to deny qualified immunity, the *Fulton* Court cited to *Abbott v. Sangamon County, Ill.*, 705 F.3d 706, 732 (7th Cir. 2013) and *Estate of Starks v. Enyart*, 5 F.3d 230, 233 (7th Cir. 1993) as examples of clearly established Seventh Circuit caselaw prohibiting officers from using significant force on non-resisting or passively resisting suspects. *Fulton*, 2018 U.S. Dist. LEXIS 88699 (N.D. Ind.) at *39.

Just as the plaintiff in *Fulton* initially refused to comply with the officers' command to get on his knees, Joshua did not comply with Wachholz's order to be handcuffed. Despite the *Fulton* plaintiff's initial non-compliance, the court found that there was a genuine dispute of material fact as to whether the use of a Taser was excessive in the situation. In turn, just because an individual

20

did not comply with an officer's initial order does not mean the officer's continued use of force is reasonable.

In *Morfin v. City of E. Chicago*, 349 F.3d 989 (7th Cir. 2003), the Seventh Circuit reasoned that even though the plaintiff repeatedly refused to obey police orders and attempted to evade officers, a reasonable jury could find that the plaintiff did not resist arrest until the officers took him to the ground. *Id.* at 1005. Given that the plaintiff did not resist until after the use of excessive force, a reasonable jury could have found that there was no reason to exert that level of force. *Id.* Here, once Joshua retreated into his cell, he attempted to comply with Wachholz's initial order, but Wachholz, along with Shotliff and Poquette, took Joshua out of his cell and threw him to the floor. (Appellee's App. 14, ¶¶ 81, 82.) According to *Morfin*, even if Joshua had resisted after his attempts to comply with the orders was disregarded by the Officers, a jury could find that the Officers' force was excessive.

Wachholz contends that his use of force was justifiable because he was faced with "active resistance" by Joshua. (Defendants-Appellants' Brief, p. 20.) To support this argument, Wachholz improperly cites to factually distinguishable cases where the detainees/arrestees were exhibiting significantly more resistance than Joshua. First, Wachholz references *Dockery v. Blackburn*, 911 F.3d 458, (7th Cir. 2018) a case where the Seventh Circuit found an officer's use of force against an actively resisting detainee to be reasonable. Prior to using a Taser, the officers in *Dockery* were faced with the following conduct by the detainee: swaying and becoming visibly restless, grabbing an officer's shoulder and shaking it, abruptly moving towards a smaller officer once she unholstered her Taser, wildly kicking his legs and jumping to his feet when the officers tried to handcuff him, and continuing to sit upright and pulling out one of the Taser prongs when the officers ordered him to get on the ground. *Id.* at 462. Unlike the detainee in *Dockery*, Joshua was

21

not physically threatening the officers; he passively retreated into his cell after refusing to comply with Wachholz's initial order.

Second, Wachholz cites *Brooks v. City of Aurora, Ill.*, 653 F.3d 478 (7th Cir. 2011), a Fourth Amendment case involving physical resistance by the arrestee. In *Brooks*, the arrestee was barbecuing outside his apartment when an officer arrived on the scene and informed him that he was under arrest. *Id.* at 480-81. The arrestee responded by "backpedaling rapidly" away from the officer and batting the officer's hands away, at which point the officer deployed pepper spray. *Id.* at 481. *Brooks* involved an arrestee outside of his home evading a police officer at a rapid pace. This fundamentally differs from Joshua backing into his cell in the confinement of a jail. Just because both individuals retreated away from an officer does not mean the need for the use of force was equivalent.

Joshua's resistance to Wachholz is much more akin to *Cyrus*, *Fulton*, and *Morfin* than *Dockery* and *Brooks*. While Joshua may have initially refused to comply with Wachholz's order, his resistance did not entail a threat of violence as did the *Dockery's* detainee. The District Court stated that "no other evidence suggests that Joshua was a physical threat at the time that Wachholz initiated contact." (A. 1, Decision p. 7.) Thus, while Wachholz's initial response to Joshua's non-compliance may have been reasonable, Joshua never escalated his resistance to the point where immediate continued use of force was necessary. Instead, Wachholz's "initial contact and refusal to disengage unquestionably escalated the confrontation, prompting Shotliff and Poquette to join in on an on-going physical altercation." (*Id.* 8.) Based on a consideration of these six factors, Wachholz unquestionably violated Joshua's Fourteenth Amendment right to be free from the use of excessive force.

### ii. The Facts and Allegations Support a Finding that Officers Shotliff and Poquette Violated a Constitutional Right.

Joshua adequately alleged that Shotliff and Poquette used excessive force, in violation of the Fourteenth Amendment. (Appellee's App. 63-72.) Shotliff and Poquette are not entitled to qualified immunity for reasons similar to those reasons Wachholz is not entitled to qualified immunity. Both Shotliff and Poquette were in the cell with Joshua when he had his hands behind his back with his face against the wall. (Appellee's App. 11, ¶ 67.) Joshua was not resisting the officers' orders at this time; rather, he made clear efforts to show the officers he was attempting to comply with their instructions. (*Id.*) Shotliff and Poquette's further use of force was gratuitous. Joshua did not pose a security threat. (Appellee's App. 13, ¶¶ 78, 80.) Joshua was outnumbered, in the confines of his cell, with his hands above his head. (Appellee's App. 11, ¶ 67.) Any further resistance by Joshua after the Officers became physical with him was a passive response to the officers rejecting his efforts to comply – he was trying to get away to safety, not attack the officers. (Appellee's App. 13, ¶ 79.) Shotliff's and Poquette's conduct was clearly an excessive use of force, in violation of the Fourteenth Amendment.

*Price v. McCoy*, 2021 U.S. Dist. LEXIS 215450 (N.D. Ill.) is particularly instructive to demonstrate the unreasonableness of officers' use of significant force. In *Price v. McCoy*, the inmate approached an interlock door at the jail, and defendant-officer McCoy gave him a verbal command to step back from the doorway to the interlock. *Id.* at *8. The inmate complied but stated that he needed to talk to the officer, moving his hands while he spoke. *Id.* As McCoy attempted to close the interlock door, the inmate pushed the door open, causing it to hit McCoy's arm. *Id.* at *9. Once the door closed, McCoy, the inmate, and Officer Braeseke were locked together in the interlock. *Id.*

Concerned for Braeseke's safety, McCoy sprayed pepper spray on the inmate's face, giving him verbal commands to get on the ground for handcuffing. *Id.* When the inmate did not comply with the order, McCoy grabbed his arm to handcuff him. *Id.* at *10. The inmate resisted by flailing his arms. *Id.* Braeseke then made an "all-available" call to available officers. *Id.* McCoy alleged that the inmate continued resisting her efforts to restrain him, which led to McCoy striking the inmate's face to subdue him. *Id.* The inmate alleged that he was not resisting McCoy at that time. *Id.* A third officer, Mendoza, arrived at the scene and ordered the inmate to stop resisting. *Id.* at *10-11. When the inmate refused to comply, Mendoza performed a take-down procedure to gain control. *Id.* at *11.

The *Price* officers argued that their conduct was reasonable due to the inmate's initial resistance to McCoy's orders and his "aggressive" appearance. *Id.* at *18. The district court cited *Abbott v. Sangamon County, Ill.*, 705 F.3d 706, 729 (7th Cir. 2013) to reject this argument and deny qualified immunity, noting that even if the initial use of force was justified, that does not mean all subsequent uses of that force were justified. *Id.* Rather, force is only reasonable when it is used in proportion to the threat posed. *Id.* As the threat changes, so should the degree of force that is implemented. *Id.* It is the "totality of circumstances," not the first forcible act, that determines whether officers' actions were objectively reasonable. *Id.* at *19.

Based on the inmate's testimony and the video evidence, the *Price* court ruled that a reasonable jury could conclude that the use of pepper spray and the takedown was an excessive use of force. *Id.* at *20-21. Joshua's case is analogous to *Price*. In both cases, there was an inmate who did not comply with an initial order; there was a call for backup; backup arrived and took the inmate to the floor; the inmate claimed he was not resisting; and the video evidence supported the conclusion that a reasonable jury could find that the use of force was not objectively reasonable

24

based on the totality of the circumstances. Therefore, even though Joshua initially refused to comply with Wachholz's order, the situation changed when Joshua submitted. As Joshua's demeanor changed, Shotliff and Poquette's degree of force used should have changed with it.

*Richer v. La Crosse County*, 2002 U.S. Dist. LEXIS 27415 (W.D. Wisc) is another analogous case that illustrates the unreasonableness of officers' use of significant force to restrain an inmate. After the inmate in *Richer* had argued with defendants-jailers Benrud and Durand, his demeanor became threatening and confrontational. *Id.* at *4. Benrud informed the inmate he would be placed in lockdown and told him to turn around and place his hands behind his back. *Id.* The inmate did not comply; rather, he held his hands flat, palms out and asked what he had done. *Id.* In response, Benrud attempted to force the inmate's arm behind his back while Durand grabbed the inmate's other arm. *Id.* at 5. When Durand grabbed his leg, the inmate told the jailers he would comply, but Benrud said it was too late for compliance and struck the inmate in the eye with his elbow. *Id.*

A third officer, Lyngaas, called for the assistance of officers Dawson and Verse. *Id.* Dawson grabbed the inmate's hair and punched him in the left eye. *Id.* Dawson then placed his hands behind the inmate's neck in an effort to push him down. *Id.* All parties ended up on the floor, with the inmate on his stomach. *Id.* While on the floor, the inmate was in and out of consciousness, and he began to vomit. *Id.* at *5-6. The officers eventually were able to handcuff the inmate. *Id.* at *6.

Similar to *Price*, the district court in *Richer* held that while the officers were entitled to use some amount of force to restrain the inmate, that did not mean they had "carte blanche to restrain [the inmate] in whatever manner they wished." *Id.* at *15. In its decision to deny qualified immunity, the court cited to *Thomas v. Stalter*, 20 F.3d 298 (7th Cir. 1994) to show that it had been

well-established that the Seventh Circuit prohibited striking an inmate when it was unnecessary as a means of control. *Id.* at *18. The *Richer* Court also relied on *Whitley v. Albers*, 475 U.S. 312 (1986) to emphasize the analysis of the relationship between the need for force and the amount of force used. *Id.* In both *Richer* and in Johsua's case, the officers' initial use of force may have been reasonable, but that did not mean the officers had complete freedom to apply as much force as they wanted.

The Officers overlook this relationship between the need for force and the amount of force used. Instead, they rely on *Soto v. Dickey*, 744 F.2d 1260 (7th Cir. 1984) and *Kingsley v. Hendrickson*, 576 U.S. 389 (2015) to baldly claim that officers may use physical force to gain compliance when an inmate is uncooperative because the officers have a legitimate interest in managing the facility. (Defendants-Appellants' Brief, p. 30.) The issue is not whether officers are allowed to use **any** physical force to gain compliance. Instead, the question is whether the **amount** of force used by the officers was objectively reasonable based on the need for force in the situation. *Richer* 2002 U.S. Dist. LEXIS 27415, at *15 (citing *Whitley v. Albers*, 475 U.S. 312 (1986)). Neither *Soto* nor *Kinglsey* provided Shotliff and Poquette with the freedom to apply excessive force. Just because the application of some amount of force may have been reasonable to obtain compliance does not mean the officers had "carte blanche" to restrain Joshua in any way they wished.

The Officers improperly frame disputes of material fact as undisputed to strengthen their analogies to Seventh Circuit caselaw. For example, the Officers claim "video evidence shows that Joshua resisted the Deputies' attempts to move him outside of the cell as they undertook the first steps to move out of the cell." (Defendants-Appellants' Brief, p. 34.) The District Court addressed this very portion of the video footage in its Decision, ruling that "the video footage dose not

conclusively resolve the parties' factual dispute." (A. 1, Decision p. 9.) While Defendants-Appellants contend that this portion of the video indisputably shows that Joshua was actively resisting, "Joshua's body is not in view, and his foot placement could just as easily be perceived as an attempt by Joshua not to lose his footing." (*Id.*)

Further, the Officers argue that because Joshua was trying to "get away" from the Deputies in the cell, it is undisputed that he was actively resisting. (Defendants-Appellants' Brief, p. 34.) Significantly, the Officers never asked Joshua what he meant by trying to "get away." Joshua testified that he was doing everything he could to comply while in the cell. And he *was* in a cell: to get away from the officers would have meant trying to leave the cell, which Joshua clearly was not trying to do. He was afraid of the Officers because they refused to accept his acquiescence and began applying significant force. Regardless, what Joshua meant by this comment simply creates another disputed fact.

Joshua's actions are readily distinguishable from the active resistance displayed by the individuals in *Dockery* and *Brooks*, as argued above. (See Plaintiff-Appellee's Brief, pp. 21-22.) On the one hand, the detainee in *Dockery v. Blackburn*, 911 F.3d 856 (7th Cir. 2018) was "actively resisting" officers when he was swaying and becoming visibly restless, grabbed an officer's shoulder and shook it, abruptly moved towards a smaller officer once she unholstered her Taser, wildly kicked his legs and jumped to his feet when officers tried to handcuff him, and continued to sit upright and pulled out one of the Taser prong when the officers ordered him to get on the ground. *Id.* at 462. On the other hand, Joshua's "resistance" was limited to his attempt to enter his cell (which he was asked to do in the first place) and to complying with the officers commands while he was in the cell. Joshua was not a threat to the officers. It is undisputed that neither Shotliff nor Poquette recognized Joshua as a threat. (Appellee's App. 13, ¶¶ 78, 80.) Joshua also verbally

27

informed the Officers that he was not resisting, and he was not resisting until the Officers refused to accept his compliance. (Appellee's App. 11, ¶ 67.) Therefore, just because the Officers declined to handcuff Joshua in his cell when he gave them the opportunity does not mean he was a threat. Joshua's "resistance" – if it can even be called that – is not comparable to the detainee's active resistance in *Dockery*.

The arrestee's resistance in *Brooks v. City of Aurora, Ill.*, 653 F.3d 478 (7th Cir. 2011) is also distinguishable from Joshua's conduct. *Brooks* did not take place in a custodial setting; it involved an individual attempting to elude an arresting officer outside of the plaintiff's home. *Id.* at 480-81. The distinction in setting is imperative when considering the reasonableness of the respective officer's actions. The *Brooks* arrestee "backpedaling rapidly" away from an officer outside his home is vastly different from Joshua retreating into his jail cell. Joshua's conduct serves as evidence of acquiescence, while the *Brooks* arrestee's conduct is evidence of evasion.

The Officers argue that under *Brooks*, Joshua was "still a threat" because he was "not yet in handcuffs," which they claim justified taking him to the ground. (Defendants-Appellants' Brief, p. 33.) But the Officers are to blame for Joshua ultimately not being contained in handcuffs. Joshua made an overt attempt to show his compliance by placing his hands behind his back, allowing the Officers to handcuff him. (Appellee's App. 11, ¶ 67.) Unlike the arrestee in *Brooks*, who was not in a cell and had the freedom to retreat into his home or to escape entirely, Joshua was confined to his cell. Rather than ending the entire situation by locking Joshua in his cell and waiting for backup – as is protocol – Wachholz escalated the situation by following Joshua into his cell. (Appellee's App. 9, ¶ 55.) Wachholz's actions were counterintuitive given that his ultimate goal was to move Joshua from the cell he was currently confined in into another cell. (Appellee's App. 12, ¶ 71.)

28

The *Brooks* arrestee's ability to escape posed an entirely distinguishable threat compared to Joshua.

The Officers' analogy to *Johson v. Scott*, 576 F.3d 658 (7th Cir. 2009) is also inapplicable. In *Johnson*, the plaintiff was evading arrest by darting into a residential yard and hurtling over a fence. *Id.* at 659. When the pursuing officer was only six to eight feet behind the arrestee, he turned around and gave in. *Id.* Given that the officer only had a "split second" to react after the fleeing suspect surrendered, the court determined it was reasonable for the officer to apply continued force because he did not know the suspect was subdued. *Id.* at 660.

As explained in the analysis of *Brooks*, an arrestee fleeing out in the open poses a drastically different threat than an inmate retreating into a cell. Furthermore, the *Johnson* officers only had a "split second" to determine if the fleeing suspect was subdued. The Officers had much more time to recognize that Joshua was subdued. There was roughly ten seconds between Wachholz initially grabbing Joshua's arm and Shotliff arriving on the scene when Wachholz knew Shotliff was imminently to arrive. (Appellee's App. 11, ¶ 62.) By the time Poquette entered the cell, Joshua had his back toward Wachholz, he placed his hands behind his back, and informed the Officers he was not resisting – clear evidence of a subdued, compliant inmate. (*Id.* ¶¶ 65-67.) *Johnson* is far too dissimilar from Joshua's case to serve as evidence of an officer's reasonable conduct.

Finally, Joshua's expert testimony is unnecessary to establish the reasonableness of Shotliff and Poquette's actions. Upon motion for summary judgment, a court may consider "particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations, admissions, interrogatory answers, or other materials." Fed. R. Civ. P. 56(c)(1)(A). Sworn testimony is just one component of a much larger

record of evidence the court will consider. *Woods v. City of Chicago*, 234 F.3d 979, 988 (7th Cir. 2000). Joshua is not relying on this expert's testimony to demonstrate whether Shotliff and Poquette acted reasonably. The expert's testimony is irrelevant.

Nor is Joshua required to rely on the expert's testimony; expert opinion testimony is just one piece of the evidence. *Pena v. Leombruni*, 200 F.3d 1031, 1034 (7th Cir. 1999) (expert testimony is not necessary to determine reasonableness of force when that question was within lay competence). As the District Court provided, "the absence of an opinion about whether defendants' use of force, particularly taking Joshua to the ground, does not establish that their use of force was reasonable given the factual dispute surrounding their takedown." (A. 1, Decision, at 11) Joshua's expert testimony is not dispositive of Shotliff and Poquette's reasonableness in this case.

Joshua has demonstrated that Shotliff and Poquette violated the Fourteenth Amendment's prohibition on excessive use of force. The Officers attempt to justify the reasonableness of their actions by relying on caselaw wherein the detainees at issue were actively resisting officers. Joshua's conduct is readily distinguishable from the active resistance described in the Officers' cases. In turn, when considering the facts in the light most favorable to Joshua, the Officers clearly violated a constitutional right.

### b. Joshua's Constitutional Right was Clearly Established at the Time of the Incident.

Qualified immunity protects government officials from liability when their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known. *Alicea*, 815 F.3d at 1291; *Fulton v. Dulin*, 2018 U.S. Dist. LEXIS 88699 (N.D. Ind.), at *32. To determine if a right is "clearly established," courts look at the right in a particularized sense. *Alicea*, 815 F.3d at 291. This Court will turn to controlling precedent from the Supreme

Court or the Seventh Circuit Court of Appeals, when available; however, "a case holding that the exact question is unlawful is not necessary." *Id.* "Even where there are notable factual distinctions," previous caselaw may provide an officer warning that his conduct is unlawful. *Id.*

The Seventh Circuit Court of Appeals clearly established that an officer may not use a "significant level of force on a non-resisting or a passively resisting individual." *Id.* at 291-92 (citing *Holmes v. Vill. Of Hoffman Estates*, 511 F.3d 673, 687 (7th Cir. 2007); *Rambo v. Daley*, 68 F.3d 203, 207 (7th Cir. 1995)). Under the objective reasonableness test, an officer is not allowed to apply greater force than is reasonably necessary. *Banks v. Stolz*, 2015 U.S. Dist. LEXIS 54257 (C.D. Ill.) at *10. The Seventh Circuit has held that "the use of more force than necessary on a plaintiff who resists only that force can constitute excessive force." *Id.* (citing *Morfin v. City of E. Chicago*, 349 F.3d 989, 1005 (7th Cir. 2003)). Courts of Appeal have held that while an initial use of force may be justified, the repeated use of force may be found to be "grossly disproportionate to any threat posed and therefore unreasonable." *Id.*; *Ramos v. Rodriguez*, 2022 U.S. Dist. LEXIS 16759 (N.D. Ill.) at *8.

In *Banks v. Stolz*, 2015 U.S. Dist. LEXIS 54257 (C.D. Ill.), the plaintiff led the police on a 13-minute car chase. *Id.* at *2. After the plaintiff stopped, he placed his hands out of the window of his vehicle. *Id.* An officer pulled the plaintiff out of the car on to the ground. *Id.* While on the ground, the plaintiff was not moving. *Id.* The officers Tasered the plaintiff and physically accosted him. *Id.* at *2-3. In its denial of qualified immunity, the *Banks* Court relied on *Morfin*, 349 F.3d and *Cyrus v. Town of Mukwonago*, 624 F.3d 856 (7th Cir. 2010) to demonstrate the well-established Seventh Circuit caselaw. *Id.* at *10. The court emphasized the crux of the *Cyrus* holding, specifically that [f]orce is reasonable only when exercised in proportion to the threat posed, and as the threat changes, so too should the degree of force . . . It's the totality of the

circumstances, not the first forcible act, that demonstrates objective reasonableness." *Id.* at *10-11 (quoting *Cyrus*, 624 F.3d at 863). Because this law was well settled and well known to any reasonable officer, the *Banks* Court denied qualified immunity. *Id.* at *11.

In *Price v. McCoy*, 2021 U.S. Dist. LEXIS 215450 (N.D. Ill.), the district court cited *Abbott v. Sangamon*, 705 F.3d 706, 732 (7th Cir. 2015), noting that it was well-established in the Seventh Circuit that officers could not use significant force on non-resisting or passively resisting suspects. *Id.* at *22-23. The *Price* court also cited to *Clash v. Beatty*, 77 F.3d 1045 (7th Cir. 1996) as an example of a dismissal of a qualified immunity appeal based on a question of fact as to whether officers applied "wholly gratuitous" force against a subdued suspect who was not responding. *Id.* at 1048. Based on these principles, even though a detainee may have previously refused to comply with an officer's orders, or even have posed a physical threat, excessive force may still be unreasonable. *Price v. McCoy*, 2021 U.S. Dist. LEXIS 215450 (N.D. Ill.) at *23.

In *Fulton v. Dulin*, 2018 U.S. Dist. LEXIS 88699 (N.D. Ind.) at *39, the district court denied qualified immunity and relied on *Abbott v. Sangamon County, Ill.*, 705 F.3d 706, 732 (7th Cir. 2013) and *Estate of Starks v. Enyart*, 5 F.3d 230, 233 (7th Cir. 1993) as examples of the well-established Seventh Circuit law prohibiting officers from using significant force on non-resisting or passively resisting suspects.  In Joshua's case, the Officers used significant force on an inmate who was, at most, passively resisting. Once Joshua was in his cell, he was not resisting at all. It is undisputed that Joshua did not pose a threat to the Officers. Thus, the Officers are not entitled to qualified immunity.

In *Richer v. La Crosse County*, 2002 U.S. Dist. LEXIS 27415 (W.D. Wisc.), the district court similarly relied on well-defined law to deny qualified immunity, referencing *Thomas v. Stalter*, 20 F.3d 298 (7th Cir. 1994) to show that it had been clearly established that the Seventh

Circuit prohibited striking an inmate when it was unnecessary as a means of control. *Id.* at *18. Just as officers unnecessarily striking an inmate as a means of control is unreasonable, throwing a passively resisting or non-resisting inmate to the floor as an unnecessary means of control is similarly unreasonable.

In *Ramos v. Rodriguez*, 2022 U.S. Dist. LEXIS 16759 (N.D. Ill.), the district court relied on *Abbott v. Sangamon*, 705 F.3d 706, 732 (7th Cir. 2015) to deny qualified immunity, holding that it was clearly established that officers may not use significant force on non-resisting or passively resisting suspects. *Id.* at *17. *Ramos* turned to *Phillips v. Cmty. Ins. Corp.*, 678 F.3d 513, 527 (7th Cir. 2012), finding that permitting substantial escalation of force in response to passive non-compliance would conflict with previous Seventh Circuit rulings. *Ramos* also relied on *Miller v. Gonzalex*, 761 F.3d 822, 829 (7th Cir. 2014), reasoning that the ban on excessive force applies even when a detainee previously refused to comply with orders.

Joshua was not resisting the Officers. As described by the District Court, "Joshua was not verbally threatening Wachholz; he was backing away from Wachholz towards his cell door; and he did not present a safety threat to other inmates, as the only inmate in the cellblock." (A. 1, Decision p. 8.) Joshua also did not pose a threat to Shotliff or Poquette. (Appellee's App. 13, ¶¶ 78, 80.) Joshua was backing into his cell to lock down, complying with Wachholz's initial command. If Wachholz would have simply left Joshua in his cell, he would have been secure until the proper discipline could be determined and implemented. It was "clearly established" by December 23, 2020, that the officers' conduct in this case violated Joshua's rights.

The Officers attempt to dispute that the right was clearly established by making undeveloped claims which misstate Joshua's arguments and misrepresent clearly established Seventh Circuit caselaw. Joshua responds to each of the Officers' arguments accordingly:

First, the Officers argue that Joshua defined the right much too broadly. (Defendants-Appellants' Brief, p. 25.) The Officers assert that Joshua's alleged right was that "the objective reasonableness test does not allow an officer to use greater force than is necessary." (*Id.* 25.) That assertion fundamentally misrepresents Joshua's explanation of the right at issue. In Joshua's response to summary judgment, and throughout this brief, Joshua has argued that "[w]ell prior to December 23, 2020, it was clearly established that **an officer may not use a significant level of force on a non-resisting or passively resisting individual.**" (Appellee's App. 73.) (Emphasis added.) the Officers conveniently omit the use of force on a "non-resisting or passively resisting individual" to frame Joshua's asserted right as overly broad.

Rather than responding to Joshua's asserted right, the Officers initially argue that there is no clearly established law prohibiting an officer from grabbing an inmate "by the arm for purposes of handcuffing when they are refusing to be handcuffed for failing to comply with jail rules." (Defendants-Appellants' Brief, p. 25.) Joshua does not contend that he had a clearly established right not to have his arm grabbed. Joshua's claim that the officers were not objectively reasonable depends on the totality of the Officers' actions, not just the first forcible act. Wachholz grabbing Joshua's arm, by itself, may be reasonable. But that initial contact, when considered along with Wachholz refusing to let go as Joshua retreated into his cell, checking Joshua against the wall and attempting to throw him to the floor, and then violently taking him out of the cell and throwing him to the floor in the cellblock does constitute an excessive use of force.

The Officers next argue that there is no "clearly established right to not be taken outside of a cell and to the ground for handcuffing after refusing and resisting officers' attempts at handcuffing him and when he had previously refused orders to lock down." (Defendants-Appellants' Brief, p. 38.) It defeats the purpose of the qualified-immunity analysis to define the

right this narrowly. *Thompson v. Cope*, 900 F.3d 414, 421-22 (7th Cir. 2018). If the right is defined too narrowly based on the exact factual scenario presented, officers will almost always be entitled to qualified immunity. *Id.* at 422 (quoting *Golodner v. Berliner*, 770 F.3d 196, 206 (2d. Cir. 2014)). Once again, the Officers isolate certain facts to frame the violated right in a highly specific manner, excluding the totality of the circumstances at issue. This Court should follow the well-established Seventh Circuit precedent and avoid defining the right as narrowly as proposed by the Officers.

Second, the Officers refer to *Anderson v. Romero*, 72 F.3d 518 (7th Cir. 1995) to argue that the cases cited by Joshua "cannot be used to defeat qualified immunity" because they were unpublished cases or decisions rendered by a district court. (Defendants-Appellants' Brief, p. 26.) However, the Officers' explanation of the law omits a key component of the *Anderson* ruling. While *Anderson* provided that district court decisions, "by themselves," cannot clearly establish the law, *Anderson* also stated that district court decisions "are evidence of the state of the law. Taken together with other evidence, they might show that the law has been clearly established." *Anderson*, 72 F.3d at 525.  Joshua cited to *Alicea*, a published Seventh Circuit Court of Appeals decision, to show that it is clearly established that an officer may not use a significant level of force on a non-resisting or passively resisting individual. (Appellee's App. 73.) Joshua also referenced various district court decisions, which, when taken together with *Alicea*, serve as evidence of the state of the law, as permitted by *Anderson*. (Appellee's App. 73-76.)

Third, the Officers contend that Joshua's citation to Seventh Circuit caselaw is improper because the cases are factually distinguishable. For example, the Officers allege that *Cyrus v. Town of Mukwonago* and *Morfin v. City of East Chicago* are inapplicable because they are outside the correctional setting and involve higher levels of force. (Defendants-Appellants' Brief, p. 26.) Similarly, the Officers assert that *Phillips v. Cmty. Ins. Corp*, *Abbott v. Sangamon Cnty. Ill.*, and

*Miller v. Gonzalez* are all "readily distinguishable" because the use of force was greater, the plaintiff was immobile, and they involved the use of weapons. (Defendants-Appellants' Brief, p. 39.)

These five cases demonstrate how the Seventh Circuit has clearly established a prohibition on the use of significant force against a passively resisting or non-resisting individual. Factual disparities between Joshua's case and these cases are not dispositive of whether the law has been clearly established. The Supreme Court has clarified that a case holding that the exact action in question is unlawful is not necessary to determine if a right is clearly established. *Safford Unified Sch. Dist. No. 1 v. Red-ding*, 557 U.S. 364, 377-78, 129 S. Ct. 2633 (2009). Even if there are "notable factual distinctions," the prior cases still may provide an officer with reasonable warning that his conduct is unlawful. *Alicea v. Thomas*, 815 F.3d 283, 291 (7th Cir. 2016) (citing *Phillips v. Cmty. Ins. Corp.*, 678 F.3d 513, 528 (7th Cir. 2012)). Therefore, even if this Court finds "notable factual distinctions," these five cases still provided the Officers with reasonable warning that use of significant force against a passively resisting or non-resisting inmate is unreasonable.

Fourth, the Officers argue that Joshua cannot rely on *Price v. McCoy*, *Price v. Mueller-Owens*, and *Ramos v. Rodriguez* to demonstrate that the law was clearly established because these cases were decided after Joshua's incident. (Defendants-Appellants' Brief, pp. 26, 38.) Even though these cases came after December 23, 2020, they recognize the law that was clearly established in the Seventh Circuit prior to December 23, 2020. *See Simpson v. Little*, 16 F.4th 1353, 1365 (10th Cir. 2021) (citing *McCowan v. Morales*, 945 F.3d 1276, 1287, 1289 (10th Cir. 2019) (recognizing that a case decided after the incident can state clearly established law when the case ruled that the relevant law was clearly established on an earlier date preceding the events at issue)). For example, in *Price v. McCoy*, the district court cited to *Abbott v. Sangamon*, 705 F. 3d

706, 732 (7th Cir. 2015), noting that it was well-established in the Seventh Circuit that officers could not use significant force on non-resisting or passively resisting suspects. 2021 U.S. Dist. LEXIS 215450 (N.D. Ill.) at *22-23. Similarly, in *Ramos v. Rodriguez*, the district court relied on *Abbott*, as well as *Phillips v. Cmty. Ins. Corp.*, 678 F.3d 513, 527 (7th Cir. 2012) to find that permitting substantial escalation of force in response to a passive, non-compliant individual would be incompatible with Seventh Circuit caselaw. 2022 U.S. Dist. LEXIS 16759 (N.D. Ill.) at *17. Even though cases such as *Price v. McCoy* or *Ramos v. Rodriguez* were decided after December 23, 2020, they still state relevant law that was clearly established on a date preceding the events at issue.

Finally, the Officers reference *Huff v. Tabler*, No. 18-cv-122, 2019 WL 3499494 (July 31, 2019, N.D. Ind.) as an example of a court granting qualified immunity to officers who used force to secure a non-compliant detainee. In *Huff*, the detainee initially refused and resisted officers' efforts to handcuff him. *Id.* at *2. Once the officers forced him to the ground, Tasered him, and placed handcuffs on his wrists, the detainee continued to resist. *Id.* When the officers escorted him to a padded cell, the detainee maintained his resistance, kicking a bucket, and struggling with the officers until they held him face down on the floor and handcuffed his ankles. *Id.* Upon arrival at the padded cell, the detainee refused the officer's order for him to kneel so they could remove the handcuffs around his ankles. *Id.* at *2-3. After further struggles, the detainee threatened an officer's son's life. *Id.* at *3.

In *Huff*, it was undisputed that the detainee was actively resisting the officers throughout the entire incident. The detainee also presented both verbal and physical threats to the officers. *Huff* does not serve as persuasive evidence of the reasonableness of an officer's response to a passively resisting or non-resisting inmate. The District Court rejected *Huff*'s applicability in the

37

Officers' motion for summary judgment, finding that "there was no dispute that the [*Huff*] detainee was resisting the officers involved," while a reasonable jury could conclude that Joshua was "allowing the deputies to handcuff him." (A. 1, Decision p. 10.) This Court should not consider *Huff* in its analysis of whether Joshua's right was clearly established.

Ultimately, the Officers fail to overcome Joshua's demonstration of the clearly established law prohibiting an officer from using a significant level of force on a non-resisting or passively resisting individual. The Officers misrepresent Joshua's explanation of his asserted right, misinterpret Seventh Circuit law, and fundamentally fail to show that Joshua did not have a clearly established right. Therefore, the Officers are not entitled to qualified immunity.

## CONCLUSION

For these reasons, Joshua respectfully requests this Court dismiss this appeal for lack of jurisdiction. If this Court reaches the merits of qualified immunity, Joshua asks this Court to affirm the decision of the District Court, either on the grounds that it is premature to rule on qualified immunity, or on the grounds that qualified immunity does not apply to the Officers.

Dated this 18th day of August, 2023.

Respectfully submitted,

GINGRAS, THOMSEN & WACHS, LLP

s/ *Paul A. Kinne*
Paul A. Kinne
State Bar No.: 1021493
8150 Excelsior Drive
Madison, WI 53717
Telephone: (608) 833-2632
Email: Kinne@gtwlawyers.com

Attorney for Plaintiff-Appellee

## CERTIFICATE OF COMPLIANCE

The undersigned, counsel of record for Plaintiff-Appellee, furnishes the following in compliance with Fed. R. App. P. Rule 32(g):

1. This document complies with the type-volume limit of Fed. R. App. P. 32(a)(7)(B) and Circuit Rule 32 because according to the word-count feature in Word and excluding the parts of the documents exempted from Fed. R. App. P. 32(f), this brief contains 12,307 words.

2. This brief complies with the typeface requirements of Fed. R. App. P.32(a)(5) and the type-style requirements of Fed. R. App. P. 32(a)(6) and Circuit Rule 32 because the brief has been prepared with Microsoft Word for Microsoft 365 in a proportionately spaced typeface using Times New Roman font size 12 for the body and Times New Roman font size 10 for footnotes.

Dated this 18th day of August, 2023.

GINGRAS, THOMSEN & WACHS, LLP


s/ *Paul A. Kinne*
Paul A. Kinne
State Bar No.: 1021493
8150 Excelsior Drive
Madison, WI 53717
Telephone: (608) 833-2632
Email: Kinne@gtwlawyers.com

Attorney for Plaintiff-Appellee

**PROOF OF SERVICE**

The undersigned, counsel of record for Plaintiff-Appellee, hereby certifies that on August 18, 2023, Plaintiff-Appellee's Response Brief and Appendix were delivered via ECF filing. Fifteen copies of the Brief and ten copies of the Appendix were then mailed via U.S. First Class Mail to the Appellate Clerk.  Two copies of the Brief and Appendix were mailed via U.S. First Class Mail to counsel for the Defendant-Appellant.  I further certify that the mailing were correctly addressed.

Dated this 18th day of August, 2023.

GINGRAS, THOMSEN & WACHS, LLP

s/ *Paul A. Kinne*
Paul A. Kinne
State Bar No.: 1021493
8150 Excelsior Drive
Madison, WI 53717
Telephone: (608) 833-2632
Email: Kinne@gtwlawyers.com

Attorney for Plaintiff-Appellee

**TABLE OF CONTENTS TO APPELLEE'S APPENDIX**

Defendants' Response to Plaintiff's Proposed Findings of Fact ..................... Appellee's App. 001

Complaint ........................................................................................ Appellee's App. 017

Opinion and Order, March 1, 2022 ................................................... Appellee's App. 036

Plaintiff's Brief in Opposition to Defendants' Motions for Summary
Judgment ........................................................................................ Appellee's App. 047